IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 18, 2004 at Knoxville

## STATE OF TENNESSEE v. SHEILA ANN JONES

**Appeal from the Circuit Court for Bedford County**
**No. 15287     Charles Lee, Judge**

---

**No. M2003-02776-CCA-R3-CD - Filed December 9, 2004**

---

The defendant, Sheila Ann Jones, appeals the Bedford County Circuit Court's denial of alternative sentencing following her guilty plea to attempt to commit aggravated child abuse. Because the record supports the trial court's judgment, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Donna Leigh Hargrove, District Public Defender; and Andrew Jackson Dearing, III, and Michael Collins, Assistant District Public Defenders, for the Appellant, Sheila Ann Jones.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael D. Randles and Ann L. Filer, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

Charged with the aggravated abuse of her boyfriend's six-year-old daughter, the defendant stood trial in September 2003. Following the testimony of several prosecution witnesses, including the victim, the trial court declared a mistrial because a police officer in his direct testimony referred to the defendant having been "booked" by the sheriff's office prior to the offense in question. Following the order of mistrial, the defendant, with the agreement of the state, submitted an open plea to the lesser charge of attempt to commit aggravated child abuse, a Class B felony. *See* Tenn. Code Ann. §§ 39-15-402(a)(1) (2003) (aggravated child abuse), -12-101 (2003) (attempt). The trial court accepted the plea, and following a sentencing hearing, it imposed a sentence of ten years in the Department of Correction. Aggrieved that the trial court declined to award a sentencing alternative to incarceration, the defendant appealed.

The evidence admitted at trial showed that the defendant had been residing with Ben Warrick for two to three years. Mr. Warrick's daughter, the six-year-old victim, resided with them, and the defendant often cared for the victim while Mr. Warrick worked. On June 17, 2002, the defendant became angry with the victim and struck her repeatedly with a "western" belt. The victim also testified that the defendant had forced hot sauce into her mouth.

An emergency room physician who treated the victim testified that the victim had sustained bruises and abrasions to her face, torso, back, arms, and legs. He characterized the external wounds as serious enough to prompt him to perform various tests for internal injuries, although the tests, including a CAT scan, x-rays, and urine analysis, yielded negative results. The doctor prescribed pain medication and released the victim.

At the sentencing hearing, the defendant testified that the June 17, 2002 incident was an isolated event and occurred because she had been unable to afford to renew her prescription for Zoloft, a medication she had been taking for depression and "nerves." She testified the absence of Zoloft had caused her to be "irritable" and that this condition, combined with a six-pack of beer she had consumed on June 17, caused her to react uncharacteristically toward the victim, whom she professed to love as if she were her own child. The defendant testified that she had an alcohol problem, but she had never sought treatment. She asked the court to place her in a community corrections program.

Ben Warrick testified that he and the defendant had married two weeks prior to the sentencing hearing. Although he did not condone the defendant's actions in beating his daughter, he believed the beating was due to rare, unprecedented circumstances. He acknowledged that, although the custody of the victim since June 17 had been entrusted to the victim's natural mother, he would exercise visitation privileges and that, if the defendant were released into the community, she would be present in the home when the victim visited. Mr. Warrick testified that he would supervise the visitations. He urged the court to grant community placement.

Following the sentencing hearing, the trial judge made findings on the record. He mentioned the defendant's prior record of domestic assault and her "unwillingness to comply with conditions of release in the community." The judge found that the victim had been treated with exceptional cruelty. The court found no mitigating factors; it specifically rejected the defendant's being "off her medication" as a mitigating factor. The trial judge stated that incarceration "is necessary in cases of this nature so as to act as a deterrence to others similarly situated. Our society has gone awry in the lack of any family structure now." The judge mentioned the "many, many live-in girlfriends and boyfriends out there" and indicated that "those persons should be put on notice that if you harm those children, that you are going to be dealt with harshly and you are going to be incarcerated." As a result, the court denied community corrections placement or any other alternative to incarceration and ordered the defendant's ten-year sentence to be served in the Department of Correction.

When there is a challenge to the manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the defendant, and in the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo. Id.* If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its manner-of-service determination, the trial court considers: (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b) (2003), -35-103(5) (2003); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2003). The defendant in this case stands convicted of a Class B felony and receives no presumption in favor of alternative sentencing. Thus, the state had no burden to justify an incarcerative sentence via the considerations upon which incarceration must be premised. *State v. Michael W. Dinkins*, No. E2001-01711-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Knoxville, Apr. 26, 2002); *State v. Joshua L. Webster*, No. E1999-02203-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Knoxville, Dec. 4, 2000); *see* Tenn. Code Ann. § 40-35-103(1) (2003); *State v. Zeolia*, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996) (when presumption of favorable candidacy for alternative sentencing options applies, state must justify confinement by showing "evidence to the contrary" of the presumption).

A "defendant shall be eligible for probation . . . if the sentence actually imposed upon such defendant is eight (8) years or less." Tenn. Code Ann. § 40-35-303(a) (2003). Furthermore, when a defendant is statutorily ineligible for probation, she is *per se* ineligible for community corrections.[1] *Id.* § 40-36-106(c) (2003); *State v. Kendrick*, 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999); *State v. Grigsby*, 957 S.W.2d 541, 546 (Tenn. Crim. App. 1997). Thus, not only is the

---

[1]We acknowledge that Tennessee Code Annotated section 40-36-106(c) creates a "special needs" exception to certain eligibility requirements. *See* Tenn. Code Ann. § 40-36-106(c) (2003). We discern no need to examine the legal availability of the exception in the present case, however, because the record evinces no factual basis for a "special needs" placement.

defendant in the present case not entitled to a presumption of favorable candidacy for alternative sentencing, she is neither eligible for community corrections placement nor straight probation.

We hold that the record supports the trial court's denial of alternative sentencing. In so doing, upon our *de novo* review, we base our decision upon a different fulcrum than that used by the trial court. In short, although the trial court relied upon the need for deterrence as a basis for ordering full confinement, *see* Tenn. Code Ann. § 40-35-103(1)(B) (2003) (listing deterrence as a basis for overcoming a presumption of favorable candidacy for alternative sentencing and requiring confinement), we are unconvinced that the record establishes this need, *see State v. Hooper*, 29 S.W.3d 1, 10-12 (Tenn. 2000) (when deterrence is sole basis for ordering confinement, record as a whole should demonstrate that a need to deter the crime exists in the particular community, jurisdiction, or state as a whole); *State v. Bottoms*, 87 S.W.3d 95, 103-04 (Tenn. Crim. App. 2001) (finding a need for deterrence unsupported in the record). That said, we point out that there is no presumption of favorable candidacy for alternative sentencing at work in the present case, and as pointed out above, the state labors under no burden to justify an incarcerative sentence via the considerations such as deterrence. *See* Tenn. Code Ann. § 40-35-103(1)(B) (2003); *Joshua L. Webster*, slip op. at 3.

Thus, we take a different tack. A key factor in the evaluation of suitability for a sentence involving a probationary provision is the defendant's amenability to rehabilitation. *See* Tenn. Code Ann. § 40-35-102(5) (2003)*; see also id.* § 40-35-103(5) (2003); *Stiller v. State*, 516 S.W.2d 617, 620 (Tenn. 1974). In the present case, several circumstances undermine confidence in the defendant's ability to be rehabilitated.

Although in her sentencing hearing testimony the defendant expressed love for the victim and remorse for the June 17, 2002 incident, she admitted that, when she was originally questioned by a law enforcement officer, she not only denied striking the victim but also blamed the abuse on the victim's father. Also, during her testimony, the defendant said, "It was a spanking that went a little overboard." Lack of candor and credibility are indications of a defendant's poor potential for rehabilitation. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983); *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999).

Additionally, the defendant had previously been convicted of assaulting the victim's father, Mr. Warrick, and she was on probation for this assaultive offense when she abused the victim. We believe the combination of these circumstances further indicates the defendant's poor prospects for rehabilitation.

In short, the record supports the trial court's judgment, and that judgment is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-4-